

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/6/21

**Laurent S. Drogin**
Partner
212-216-8016
ldrogin@tarterkrinsky.com

September 29, 2021

**VIA ECF**

Hon. Barbara Moses, U.S.M.J.
United States Courthouse
500 Pearl Street
New York, New York 10007

> Application GRANTED to the extent the Court will hold a telephonic discovery conference on **October 18, 2021**, **at 10:00 a.m**. At that time, the parties are directed to call (888) 557-8511 and enter the access code 7746387. SO ORDERED.
>
> _____
> Barbara Moses
> United States Magistrate Judge
> October 6, 2021

Re:   *Acevedo v. Urban Management LLC, et al.*, Civil Action No. 1:19-CV-09449

Dear Magistrate Judge Moses:

We represent the Defendants and submit this letter-motion pursuant to the Court's September 14, 2021 Order (Dkt. No. 48) and in support of Defendants' request for rulings on the following discovery disputes. I certify that a meet-and-confer was held via teleconference on September 23, 2021 at 2:30 PM. Present were the undersigned and William Schmedlin, Esq. Present for the Plaintiff were attorneys Scott Flanz, Michael Autuoro, and Jeffrey Mok. Counsel conferred for approximately 21 minutes and were unable to resolve the items discussed below.

Factual Background and Overview

Urban Management ("Urban") is a small real estate management company. In this wage-and-hour case, Plaintiff, a former residential building superintendent, claims to have routinely worked more than 40 hours per week without proper compensation. Defendants dispute the hours Plaintiff claims to have worked and sought discovery to prove Plaintiff is overstating his working time. Defendants sought to demonstrate this both by testimony of witnesses familiar with the amount of time he spent working, and by showing his living expenses exceeded his earnings, suggesting he had income outside of his job and time to earn that income. As part of his job, Plaintiff had a rent-free apartment. He testified to having no income from other sources. Despite his modest wages, Plaintiff leased an apartment in Manhattan he claims was kept vacant.

Defendants claim Plaintiff lived in his leased apartment and paid for it by renting his employer-provided apartment and with income from a side-business performing handyman services.[1] This side-business undermines Plaintiff's claims that he was working full-time and exclusively for the Defendants.

---

[1] Court papers reflect that after Plaintiff's discharge, Defendants commenced legal proceedings to eject Plaintiff's "tenants" from his employer-provided apartment.

1

If Plaintiff were a perfect truth teller, there would be no need for proof and corroboration of his claims. But this is not the case. Defendants have been seeking and are now asking for discovery into several targeted topics that they have been seeking since months before the close of discovery. It is Defendants' belief that this discovery would save the Parties and the Court significant time and expense and would assist in settlement efforts.

Procedural Background

Discovery was delayed because of COVID, and the parties did not focus on discovery until the fall of 2020. On October 9, 2020, Defendants served their First Set of Requests for Documents and a Notice of Deposition for the Plaintiff. Plaintiff was deposed on November 20, 2020. Following that deposition, on December 4, 2020, Defendants served Second Document Requests and, on December 17, 2020, Third Document Requests. Copies of the relevant portions of Defendants' three sets of Document Requests and Plaintiff's responses to each are attached.

Fact discovery was originally to end on December 7, 2020. (Dkt. No. 32). The Parties each independently requested an extension of time to complete discovery. (Dkt. Nos. 39 and 40). Judge Broderick extended fact discovery until January 20, 2021. (Dkt. No. 41).[2] The Parties were ordered to meet and confer in early February 2021 (which they did) regarding any discovery disputes. (Dkt. No. 43). The Parties submitted a joint letter requesting decisions on the remaining discovery issues. (Dkt. No. 44).

Defendants' Requests for Rulings (listed in the order rulings are sought)

*Plaintiff's "vacant" second apartment*: As part of his employment as a live-in superintendent, Plaintiff was provided a rent-free apartment. Defendants contend that Plaintiff moved out, rented out the apartment for his personal gain, and lived elsewhere. Plaintiff claims to have been paid a total of $600 per week, pre-tax, with occasional extra payments (Complaint, ¶ 57) and no other sources of income[3]. Plaintiff also claims to have paid a person $150 per week to assist him. (Complaint, ¶ 53). Despite this, Plaintiff admits that, in 2016, he rented a nearby apartment costing $1,042 per month in rent (plus undisclosed amounts in utilities). Plaintiff claims he did not inhabit that apartment <u>until 2019</u> (after his employment ended), leaving it vacant for nearly three years. The income Plaintiff received from Defendants makes it impossible to believe that he could afford this. The only reasonable conclusion is that Plaintiff was earning income from sources other than Urban, which also calls into question his claims of working "90 hours per week" for Urban. (Complaint, ¶ 45).

Defendants sought: (i) "All documents concerning Plaintiff's application for any other housing[.]" (Ex. A, No. 16); (ii) "Copies of leases for the residential apartment located at 526 W. 146th Street[.]" (Ex. B, No. 1); (iii) "Copies of rent checks or other proof of payment reflecting

---

[2] The parties endeavored to complete discovery in as diligent a manner as possible despite the extraordinary conditions under which they were operating in the pre-vaccine pandemic.

[3] Responding to a Request to Admit, Plaintiff says that from the date he signed the lease for the second apartment through his termination his only source of income was from Urban.

that Plaintiff paid rent for an apartment at 526 W. 146th Street from 2016 to 2019" (Ex. B, No. 2); and (iv) "Copies of bills and concomitant payments for utilities (such as gas, electric, telephone, cable, internet) for the apartment a 526 W. 146th Street" (Ex. B, No. 3).

Plaintiff refuses to produce responsive documents, claiming they are irrelevant and cumulative due to his testimony. They are neither, as the requests seek corroborative or contradictory evidence. Plaintiff's testimony does not relieve his obligation to produce documents, which will assist Defendants' ability to prove Plaintiff had income from other source(s), calling into question his credibility in general and, specifically, about his claimed working hours.

*Limited information from tax returns:* Defendants sought limited information from Plaintiff's tax returns geared toward determining whether: (1) he used his rented apartment as his legal address, and (2) whether the amount of income he reported was substantially the same as that paid to him by the Defendants. Defendants sought "cop[ies] of Plaintiff's tax returns for any period during which Jose Rodrigues or other individuals resided in the basement apartment of 25 Convent Garden [sic].". (Ex. A, No. 27). Defendants have limited this request to between 2016 and 2019 and sought only (1) the address and (2) the total income listed by the Plaintiff on each return.

Plaintiff has refused, claiming his testimony alone made the production of any evidence cumulative. Plaintiff has also objected to the disclosure of tax returns in general, claiming no proof of relevance or compelling need.

If Plaintiff reported his legal address as his rented apartment, not the one provided through his employment, this supports Defendants' position that he was not living there, also making it credible he was renting it to others. Given Plaintiff's testimony that he had no source(s) of income other than from Urban, his tax returns should reflect that. His refusal to provide the amount of his income supports the inference that he had other income, earned while working elsewhere, and did not work the excessive hours for the Defendants he claims.

The lack of any other source of proof for Plaintiff's claims meets any compelling need for these returns. As a compromise, Defendants offered to accept the requested information via affidavit, which would provide the security of requiring Plaintiff's attorneys to review the documents to verify the affidavit's veracity. Plaintiff refused.

*Deposition of Plaintiff's Wife:* Neither side presented a non-party witness who can attest to the day-in day-out hours worked. Plaintiff's wife lived with him and could corroborate, or refute, his work and residence claims. Defendants have been prepared to serve her with a subpoena. Plaintiff has refused to permit her deposition. We are at a loss to understand Plaintiff's position, unless of course her testimony would not be supportive of his version of the facts.[4]

---

[4] Benefitting from hindsight, opposing counsel says Plaintiff's wife could have been subpoenaed before discovery closed. While factually correct, this was not practical. In this single-plaintiff case, resorting to Plaintiff's wife was a last resort if discovery from the parties and settlement efforts failed to produce a resolution. More significantly, given the nature of Plaintiff's objections, there is no reason to believe that a motion to quash would not have been brought (or would not be brought if she was subpoenaed now). If Defendants are fairly to be faulted, then the

Plaintiff claims this refusal is based on the request being belated and unduly burdensome. This is simply incorrect. In their automatic disclosures, Defendants identified "Plaintiff's wife" (whose name and address were unknown) as a witness likely to have discoverable information. Plaintiff did not identify his wife in his automatic disclosures. It was not until Plaintiff's deposition that Defendants learned the identity of his wife, where she might be located, and that she was alleged to have lived with the Plaintiff at times relevant to the litigation.

Based on Plaintiff's own testimony, the relevance of her testimony cannot be legitimately questioned, while the burden to the witness is minimal. A deposition can be conducted virtually, requiring minimal travel, and would take less than a day.

*EZ Pass Records:* Defendants testified Plaintiff was often away on weekends and they believed he was working in Pennsylvania. Plaintiff has put at issue the amount of time he was working for Defendants. Plaintiff says he had no car but does have an EZ Pass account. This is odd. Defendants sought "[a]ny EZ Pass records showing tolls paid on travel by Plaintiff out of New York City." (Ex. C, No. 2). Such information would show the dates and times the EZ Pass was used, supporting Defendants' position that Plaintiff could not have been working for them and proving further he is exaggerating his claimed working time. He refuses to produce these records.

*Business records:* Defendants sought documents concerning Plaintiff's work for individuals or entities aside from Urban. (Ex. A, No. 15). Defendants obtained and produced a business card for "Fred Construction & Repairs Corp." Plaintiff goes by the nickname "Freddy," and the business card contains his cell phone number. Plaintiff admitted this is his business card. Plaintiff further admits there is no such corporation, suggesting a further act of dishonesty, while supporting Defendants' argument that he did side-work through this *de facto* corporation.

Plaintiff is refusing to produce any information regarding this "business" based on his self-serving testimony that he did no outside work during his time employed by Defendants. Documents are necessary to determine if Plaintiff is telling the truth or lying, yet he refuses to even produce proof that the card was printed after his employment ended as he claims. Defendants contend that Plaintiff should be compelled to produce information relating to services he performed under this alias, which would include the date the business cards were printed and the location and dates of services he performed in this capacity, as this aligns directly with Defendants' testimony and evidence that Plaintiff, throughout his employment, performed side-jobs at times he claims to have been working for them. Plaintiff has refused.

                                                Respectfully submitted,
                                                TARTER KRINSKY & DROGIN LLP

                                                /s/ Laurent S. Drogin

---

interests of justice should permit them to subpoena her now. This case has not been scheduled for trial, no pretrial order date has been set, and a trial subpoena can still be served. We believe judicial economy and the interests of seeking resolution outweigh any prejudice and, for that matter, no prejudice is even claimed to exist. Any suggestion that a video deposition of a witness with information is unduly burdensome is unpersuasive.